
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 12, 2017

**MICHAEL JOSEPH LUGIAI, SR. v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2011-C-2551     J. Randall Wyatt, Jr., Judge**

———————————————————

**No. M2016-00369-CCA-R3-PC**

———————————————————

In July 2012, the Petitioner, Michael Joseph Lugiai, Sr., entered a "best interests" guilty plea to four counts of aggravated assault. He timely filed a petition for post-conviction relief alleging that he received ineffective assistance of counsel and that his plea was unknowing and involuntary. Following a hearing on the petition, the post-conviction court denied relief. After a thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Kevin McClean Kelly, Nashville, Tennessee, for the appellant, Michael Joseph Lugiai, Sr.

Herbert H. Slatery III, Attorney General and Reporter; Rachel E. Willis, Deputy Attorney General; Victor S. Johnson III, District Attorney General; and Chris Buford, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

**I. Factual and Procedural Background**

This appeal arises from the dismissal of a petition for post-conviction relief. The Petitioner was indicted for attempted first degree murder (Count 1), three counts of aggravated child abuse (Counts 2, 3, and 4), and aggravated assault (Count 5). He entered a best interest guilty plea to four counts of aggravated assault in Counts 1 through

4. Count 5 was dismissed. He was sentenced as a multiple offender to nine years' incarceration on each count to be served concurrently with release eligibility after service of thirty-five percent of the sentence.

*Plea Submission Hearing*

The Petitioner appeared in court on July 16, 2012, for a jury trial on the indicted offenses. Before the jury was brought into court, the Petitioner asked for an opportunity to speak with lead trial counsel and associate counsel.[1] After meeting with lead trial counsel and associate counsel, it was announced that the Petitioner had agreed to a plea offer, and the trial court allowed the Petitioner to enter a plea while the jury remained outside the courtroom.

At the Petitioner's plea submission hearing, after lead trial counsel explained the terms of the plea agreement, the trial court explained the nature of a best interest guilty plea. The trial court then informed the Petitioner of the nature of the charges to which the plea was offered and the range of punishment for aggravated assault and for the indicted offenses. The Petitioner then asked if he could "say something" and the following dialogue occurred:

> [THE PETITIONER]: Your Honor, uh, I - I, can I, can I say something, your Honor?
>
> THE COURT: Sure. Yes.
>
> [THE PETITIONER]: The way it was explained to me was that if I do this it is in my best interest and I, and I want to do this, but it was all contingent upon my wife and her charges, charges that she has, and I was, I was under the impression that I know [the assistant district attorney], I just want to, I just don't want her to be in trouble, you know, and . . .
>
> THE COURT: And I don't know what that all is, but I mean, it is fine with me if she is not in any trouble if that is what is agreed to, but some of the things that you are talking about I think may have to do with some sort of, you know, discussion between you, your lawyer, and [the assistant district attorney], that I haven't [b]een a party to, so I don't know what that is.

---

[1] An attorney in lead trial counsel's law firm assisted during final week's preparation for trial and was present at the trial when the Petitioner decided to enter a plea. We will refer to that attorney as "associate counsel."

(Whereupon, [the Petitioner] and [lead trial counsel] conferred.)

[LEAD TRIAL COUNSEL]: Your Honor, I've informed [the Petitioner] that I had been present when [the assistant district attorney] discussed with his wife's attorney the possible resolution to her case. I explained that was not conditional on him pleading, that it would be dealt with independently, but I attempted to give him my best impression of what would happen with her case. However, I told him clearly there was not an agreement with the State that her charges would be resolved in any particular way based on this plea, but . . .

…

THE COURT: Okay. Well, I guess what he is saying, [the Petitioner], is they haven't finally determined that, but it sounds like what [lead trial counsel] is saying is that he has the impression that if this plea goes through on you that the State might be inclined favorably towards your wife's case[.]

[LEAD TRIAL COUNSEL]: Yes, your Honor.

…

[THE PETITIONER]: Your Honor, I re – I just - I respect [the assistant district attorney] and I just wanted to say that I just wanted to put that out there and that is all I wanted to say, so, yes, I'm taking it. I want to take this –

[LEAD TRIAL COUNSEL]: Offer.

[THE PETITIONER]: – plea, plea.

THE COURT: Okay. So, in other words, you, you kind of get the feeling that since you do respect [the assistant district attorney] that you feel like he would honor that implied –

[THE PETITIONER]: Yes, your Honor.

THE COURT: – understanding about it?

[THE PETITIONER]: Yes, your Honor.

The trial court then explained to the Petitioner his right to plead not guilty, his right to a jury trial, the presumption of innocence, his right to confront and cross-examine witnesses, and his right to be protected from self-incrimination. The trial court further advised the Petitioner that by pleading guilty he waived the right to trial and appeal. The Petitioner stated that he understood that he would be giving up those rights by entering a plea. The Petitioner also agreed that he had "been over" the plea petition with lead trial counsel.

The following dialogue concerning the voluntariness of the plea is quoted from the transcript of the plea colloquy:

THE COURT: And did [lead trial counsel] sit down and explain to you in great detail all of the different questions or issues that would come from this plea?

[THE PETITIONER]: Yes, your Honor.

THE COURT: And do you feel like you understand what you are doing here now?

[THE PETITIONER]: Yes, your Honor.

THE COURT: All right. And, are you doing what you are doing here now, even though it's obvious you have some reservations about it, and it is a best interest plea, I realize that, are you doing this plea though of your own voluntary decision?

(Whereupon, there was a brief pause in the proceedings.)

THE COURT: That question has to do with whether [lead trial counsel and associate counsel] either one[,] have forced you into this or coerced you into this?

[THE PETITIONER]: No. They, they have not. They have not.

THE COURT: So is this your own personal decision?

[THE PETITIONER]: Yes, your Honor.

- 4 -

The State next presented, as a factual basis for the plea, that on July 5, 2011, a disagreement arose wherein the Petitioner struck the seventeen-year-old victim "with a phillips head screw driver several times" and "struck him with a cord and also took a kitchen knife and involved that in the altercation[.]"  The victim fled and called "911 for assistance."  The Petitioner then entered his guilty plea and was sentenced pursuant to the terms of the plea agreement.

*Post-Conviction Proceedings*

The Petitioner subsequently filed a timely pro se petition for post-conviction relief in which he raised three grounds: that he was denied the effective assistance of counsel, that the plea bargaining proceedings violated his Fourteenth Amendment rights, and that his witnesses were threatened with a lengthy prison sentence if they testified for him. The post-conviction court appointed counsel, who filed an amended petition which claimed that the Petitioner's plea should be withdrawn because the Petitioner "was not sufficiently prepared for trial" due to the ineffective assistance of counsel, that the Petitioner "should have been referred for a forensic evaluation," and that the Petitioner involuntarily and unknowingly entered his plea due to the criminal prosecution of his wife.

At the post-conviction hearing, the Petitioner testified that, following his service as a United States Army Ranger in Panama and Afghanistan, he was diagnosed with "mood disorder" and "panic anxiety disorder."  His Army medical record was admitted without objection as an exhibit.  The Petitioner read from certain portions of his medical records which indicated that the Petitioner could "no longer maintain gainful employment[]" and that he "continues to suffer from severe chronic anxiety, rapid pressured speech, low self-esteem and social withdrawal, lack of insight, [but] no suicidal plans."  The Petitioner claimed his condition caused him "to freeze up" and "kind of black-out" when confronted with stressful situations.  He said that the black-outs affect his memory, which he described as "bits and pieces" or "in and out."  He stated the discussion with lead trial counsel and associate counsel before the plea and the plea colloquy itself was stressful and that associate counsel was "shouting in [his] face" to get the Petitioner to accept the plea deal.  The Petitioner stated that he wanted a psychological evaluation, but lead trial counsel refused to have him examined.  The Petitioner said that both he and his wife were charged with criminal offenses arising from the same incident, and while those charges were pending, his wife was charged in another case.[2]  He was concerned about his wife's well-being and felt like he "had a gun to his

---

[2] Although the record is unclear regarding what offenses the Petitioner's wife was originally charged with, the subsequent charge arose from the alleged coercion of a witness, the victim in Petitioner's case.

- 5 -

head" because associate counsel told him: "F'ing take this deal, if you don't take some kind of deal[,] if you keep on going to trial you are going to f'ing lose and they are going to give her 64 years." The Petitioner claimed that he was coerced into pleading guilty and that he would have taken his case to trial if his wife had not been facing prosecution.

On cross-examination, the Petitioner said he was in the military from 1987 through 1995 and was honorably discharged. He was stationed part of that time in Panama. He was diagnosed with his current medical condition ten years after he was discharged. The doctors told him that his repetitive parachute jumps could have caused his problems. He stated that he had not seen anyone for his medical condition during the six months before he was charged in this case.

The Petitioner said that lead trial counsel represented him for about a year before he pled guilty. The Petitioner said that throughout that time he was insistent upon going to trial, but on the morning of trial, he was coerced into pleading guilty. When asked if he was intimidated by lead trial counsel and associate counsel, the Petitioner responded:

Well, I mean, my gosh, if you have got two bullies in an alley and you are the guy backed up against the wall and one of them is doing all the talking, I mean, are you not going to be intimidated by the other one as well, just because he is standing there not holding the knife or something?

The Petitioner agreed that no one threatened him while he was in court entering his plea. He claimed however that he was going "in and out" during the plea and only heard "bits and pieces" of what the trial court was asking. The Petitioner also agreed that he had discussed with lead trial counsel the possibility of calling his wife as a witness even though her cases were still pending. He stated that lead trial counsel did not discuss his testimony with him even though he told lead trial counsel that he wanted to take his case to trial. He said he was intimidated by associate counsel and that lead trial counsel was "going along with it" and agreeing with associate counsel.

Lead trial counsel testified that he had been practicing law for seven or eight years at the time the Petitioner entered his plea and that "80 or 90 percent of [his] practice was criminal defense." He said that he visited with the Petitioner approximately ten times during the year before the Petitioner pled guilty. Lead trial counsel said that the Petitioner had no problem communicating with him and that the Petitioner claimed that the victim "fabricated this entire story because he was angry with [the Petitioner]." The Petitioner's wife and daughter were present during the incident that led to the charges, and lead trial counsel interviewed both of them as potential witnesses and also had his investigator interview them. The Petitioner claimed that he and the victim argued concerning a broken "cutting machine" and that the victim left and did not return before

the police arrived the next morning. The Petitioner told lead trial counsel that the victim was injured by a person named "Latimer" during "some sort of gang initiation." The Petitioner told him Latimer was now deceased.

Lead trial counsel began to make "some substantial headway . . . on a negotiation" during the pre-trial status conference ten days before trial. He said that the Petitioner had previously been adamant about going to trial, but as the trial date neared, the Petitioner began to express interest in a plea bargain. Lead trial counsel informed the Petitioner about a six-year plea offer that would have allowed the Petitioner to serve his sentence locally. The Petitioner had approximately one year of jail credit and "would [have] come up for parole relatively soon." Lead trial counsel had a "handshake kind of agreement" with the State that the Petitioner's wife's charges would be resolved favorably if the Petitioner pleaded guilty. However, the Petitioner would not agree to the six-year plea offer. On the following Monday, a week before the trial was to begin, the State withdrew the six-year offer, offering instead a nine-year sentence.

Lead trial counsel testified that he introduced associate counsel to the Petitioner about a week before trial. On the date of the trial, lead trial counsel and associate counsel met with the Petitioner for two and a half hours about pleading guilty. Lead trial counsel testified that associate counsel was more direct than he was, but he did not "think [associate counsel] physically intimidated [the Petitioner] into taking the plea." Both lead trial counsel and associate counsel were "adamant that this was as good of a deal as the Petitioner was going to get," and they advised the Petitioner to take the deal because they thought the Petitioner's "chances of winning were low." Lead trial counsel stated that the State alleged that the Petitioner "had stabbed [the victim] 15 or 20 times with a screwdriver[.]" The "police had collected a screwdriver from [the Petitioner's] residence the next morning" and laboratory testing showed that the blood on the screwdriver matched the victim's blood. Lead trial counsel also stated that he and his investigator had a telephone conversation with the victim's sister who was staying in an extended stay motel room with her mother. He said that the victim's sister initially told him the victim was making up the entire story. At some point, her mother left the room, and the victim's sister changed her story and stated that what the victim said was true but that she could not say that with her mother in the room. Lead trial counsel's investigator interviewed the victim. Lead trial counsel characterized the victim's statement to the investigator as consistent with the victim's statement to the police. Lead trial counsel said that he explained the charged offenses and the applicable range of punishment for each offense to the Petitioner.

On cross-examination, lead trial counsel said that he did not receive a written six-year plea offer. He said that the oral six-year offer was the first plea offer he discussed with the Petitioner, and he agreed that previously the Petitioner had been adamant about

proceeding to trial. He said that he did not receive the forensic evidence report concerning the screwdriver until a couple of months before trial because the laboratory at the Tennessee Bureau of Investigation had a significant backlog of cases. He strongly advised the Petitioner against testifying because the Petitioner had 2003 convictions in Nevada "for felon in possession of a weapon and also impersonating a Federal officer" and a 1990 Illinois felony conviction for impersonating an officer. Lead trial counsel stated that the Petitioner never expressly stated that he wanted to testify, only that he wanted to go to trial.

When questioned about not seeking a psychological evaluation, lead trial counsel answered:

> He said he had a lot of pain, you know, joint type things, but I don't recall him giving me a lot or asking me a lot of questions or making it aware that he had a serious mental health diagnosis. He might have mentioned that he had some sort of anxiety because of his service or something else, but I don't recall reading the excerpt that [post-conviction counsel] had presented as an exhibit. I don't recall him telling me anything about blacking out ever.
>
> …
>
> I don't think there was a competency issue. I actually think he is fairly intelligent. He was able to converse with me a lot.
>
> He had a lot to say every time we met and a lot of opinions about issues, so I don't think that an evaluation would have said that he is unable to assist me or unable to understand what is going on.

Lead trial counsel agreed that they were seated at the counsel table in the courtroom waiting for the trial to begin when the Petitioner told him that he "wanted to talk some more." The trial court allowed lead trial counsel and associate counsel an opportunity to talk to the Petitioner in private. Lead trial counsel agreed that the Petitioner was very concerned "about what was going to happen to his wife." After extensive discussions, the Petitioner agreed to accept the offer from the State and entered the best interest plea while the jury waited. Following the hearing, the post-conviction court took the matter under advisement.

The post-conviction court entered a written order in which it summarized the post-conviction hearing testimony and addressed the claims made in the petitions for post-conviction relief. Concerning the claim for ineffective assistance of counsel, the post-conviction court found that the Petitioner failed to prove that lead trial counsel and associate counsel were ineffective. The post-conviction court credited the testimony of lead trial counsel. The court found that lead trial counsel met with the Petitioner multiple times and discussed the discovery and the State's evidence with the Petitioner "at length." The post-conviction court found that lead trial counsel "had a thorough understanding of the case and was ready to proceed with a trial." The post-conviction court discredited the Petitioner's testimony that he pleaded guilty because lead trial counsel and associate counsel did not prepare for and were not ready for trial, noting that even if that allegation was true, it "did not affect the Petitioner's decision to plead guilty[.]"

"With regard to the Petitioner's physical and psychological health condition," the post-conviction court noted that "there is no proof before the [c]ourt that would suggest that [lead trial] counsel was ineffective for failing to seek further evaluation, or that the Petitioner suffered any sort of prejudice as a result of [lead trial] counsel's decision not to explore the issue further." As to that claim, the post-conviction court found that the Petitioner failed to meet his burden of proof to warrant post-conviction relief.

Concerning whether the Petitioner entered his plea freely and voluntarily, the post-conviction court, quoting Jaco v. State, 120 S.W.3d 828, 831 (Tenn. 2003), found that the Petitioner clearly made "a voluntary and intelligent choice among the alternative courses of action open to" him. The post-conviction court noted that the plea transcript "speaks for itself" and that, although the Petitioner had some "hesitancy about pleading guilty," the Petitioner agreed during questioning by the court that the plea was "in his best interest" and that he was pleading guilty based on his "own voluntary decision."

The post-conviction court discredited the Petitioner's statement that he pleaded guilty because the State threatened his wife with prosecution. The post-conviction court noted that the Petitioner's wife had already been charged with offenses arising from the same incident that gave rise to Petitioner's charges and that "the transcript reflects that it was made explicitly clear to the Petitioner that the State made no promises regarding the prosecution of his wife in connection with this plea." Moreover, lead trial counsel explained to the Petitioner that the "State's decision regarding the Petitioner's wife was not conditional on [the Petitioner] pleading." The post-conviction court found that the State's actions concerning the Petitioner's wife's case and the Petitioner's plea "did not amount to impermissible coercion." The post-conviction court discredited the Petitioner's testimony that associate counsel shouted at him, noting that the Petitioner at

the plea hearing "explicitly denied that either of his attorney[s] coerced him into accepting the offer." The post-conviction court denied post-conviction relief, and the Petitioner timely appealed.

## II. Analysis

On appeal, the Petitioner claims that the post conviction court erred in denying post-convcition relief.

In the argument section of his brief, the Petitioner avers that his pleas were not voluntarily or knowingly entered because the Petitioner was not sufficiently prepared for trial due to lead trial counsel's lack of preparation, he was coerced into pleading guilty because his wife was threatened with criminal prosecution, and he suffered black outs during the plea hearing as a result of his anxiety disorder. The State argues that the post-conviction court properly found that lead trial counsel was not ineffective in preparing for trial and by not seeking a psychological evaluation and that there was no impermissible coercion regarding the Petitioner's wife's case. The State argues that the claim that the Petitioner suffered black outs because of an anxiety disorder was not included in the original or amended post-conviction petitions and is waived, and even if not waived, there was no evidence of black outs during the plea submission hearing. We agree with the State that the post-conviction court properly denied relief.

*Standard of Review*

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Jaco, 120 S.W.3d at 830. Post-conviction relief cases often present mixed questions of law and fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. Kendrick v. State, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. Id.; Fields, 40 S.W.3d at 456 (citing Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." Fields, 40 S.W.3d at 456 (citing Henley, 960 S.W.2d at 579); see also Kendrick, 454 S.W.3d at 457. The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. Kendrick, 454 S.W.3d at 457.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for a court to grant post-conviction relief. Strickland, 466 U.S. at 687; Henley, 960 S.W.2d at 580; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. Finch v. State, 226 S.W.3d 307, 316 (Tenn. 2007) (citing Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Henley, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. Granderson v. State, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the Strickland analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." Henley, 960 S.W.2d at 579 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)); see also Goad, 938 S.W.2d at 369. In order to prove that counsel was deficient, a petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; see also Baxter, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. Goad, 938 S.W.2d at 370. Therefore, under the second prong of the Strickland analysis, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when a petitioner challenges counsel's performance in the context of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 58 (1985); Don Allen Rodgers v. State, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764,

at *4 (Tenn. Crim. App. Apr. 26, 2012). First, a petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms. See Hill, 474 U.S. at 58. Second, "in order to satisfy the 'prejudice' requirement, a [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would have not have pleaded guilty and would have insisted on going to trial." Id. at 59.

Failure to Prepare the Petitioner for Trial. The Petitioner claims that he received ineffective assistance of counsel because trial counsel did not prepare the Petitioner for his direct testimony at trial. As a result, the Petitioner claims he thought it unwise to proceed to trial, so he entered a plea. The post-conviction court found that lead trial counsel "met with the Petitioner multiple times" and discussed the discovery and the State's evidence with the Petitioner "at length." Lead trial counsel advised the Petitioner against testifying for two reasons: (1) the Petitioner's prior criminal record, which could have been used to impeach the Petitioner's credibility, and (2) the Petitioner's explanation that the victim was injured in a gang initiation, which conflicted with certain physical evidence, namely the victim's blood found on a screw driver recovered by the police at the Petitioner's residence the morning after the victim called 911 to report an assault. The post-conviction court accredited lead trial counsel and discredited the Petitioner. The evidence does not preponderate against the post-conviction court's findings, and the Petitioner has failed to prove by clear and convincing evidence that trial counsel's representation was deficient in preparing the Petitioner for trial. He is not entitled to relief on this ground.

Failure to Seek Psychological Evaluation. The Petitioner claims that lead trial counsel's performance was deficient for failing to have him psychologically evaluated. Lead trial counsel testified that the Petitioner told him about physical pain and some anxiety but never told him about any serious mental health diagnosis or "blacking out." Lead trial counsel had no problems communicating with the Petitioner and did not believe the Petitioner's competency was an issue. The post-conviction court accredited lead trial counsel's testimony and discredited the Petitioner. The evidence does not preponderate against the post-conviction court's findings, and the Petitioner has failed to prove that lead trial counsel was ineffective in not seeking a psychological evaluation. He is not entitled to relief on this ground.

*Unknowing and Involuntary Guilty Plea*

Whether a guilty plea is intelligent and voluntary is a mixed question of law and fact. Jaco, 120 S.W.3d at 830-31. Therefore, in such cases we review the post-conviction court's findings of fact de novo with a presumption of correctness. Id. The post-conviction court's findings of law are reviewed purely de novo. Id.

A guilty plea must be entered knowingly and voluntarily, *i.e.,* the Petitioner must have made the choice to plead guilty after being made aware of the significant consequences of such a plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). When reviewing a guilty plea, this court looks to both the federal standard as announced in the landmark case Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard as announced in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). Don Allen Rodgers, 2012 WL 1478764, at *5. Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." Boykin, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, *i.e.,* that he has been made aware of the significant consequences of such a plea . . . ." Mackey, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43).

In order to determine whether a plea is intelligent and voluntary, the trial court must "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Boykin, 395 U.S. at 244. The trial court looks to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship, 858 S.W.2d at 904; Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. Boykin, 395 U.S. at 244.

Statements made by the petitioner, the defense counsel, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a the Petitioner must present more than "conclusory allegations unsupported by specifics." Id. at 74.

- 13 -

In this case, the Petitioner maintains that lead trial counsel and associate counsel coerced him into pleading guilty. The post-conviction court discredited the Petitioner's testimony that associate counsel shouted at him, noting that the Petitioner at the plea hearing "explicitly denied that either of his attorney coerced him into accepting the offer." Next the Petitioner claimed he pleaded guilty because the State threatened to prosecute his wife. The post-conviction court again discredited the Petitioner, noting that the Petitioner's wife had previously been charged and that "the transcript reflects that it was made explicitly clear to the Petitioner that the State made no promises regarding the prosecution of his wife in connection with this plea."

Quoting Jaco, the post-conviction court found "that the Petitioner clearly made 'a voluntary and intelligent choice among the alternative courses of action open to' him[.]" The post-conviction court noted that the plea transcript "speaks for itself" and that, although the Petitioner had some "hesitancy about pleading guilty," the Petitioner agreed during questioning by the court that the plea was "in his best interest" and that he was pleading guilty based on his "own voluntary decision." The plea submission hearing transcript shows that the trial court conducted a thorough Tennessee Rule of Criminal Procedure 11(b) colloquy with the Petitioner and accepted the Petitioner's plea after the Petitioner assured the trial court that he was entering his plea knowingly and voluntarily. The Petitioner avoided a potentially greater sentence by entering his plea. Under these circumstances, the Petitioner has failed to prove that his plea was not knowingly and voluntarily entered, and he is not entitled to relief on this ground.

### III. Conclusion

In conclusion, we hold that the Petitioner received the effective assistance of counsel and that his plea was knowingly and voluntarily made. We, therefore, affirm the denial of post-conviction relief.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 14 -